Our second case is 24-1893 Mountain Island Day Community Charter School v. Inspire Performing Arts Company, LLC. Mr. Vogel. May it please the Court. My name is Jonathan Vogel. I represent Jackson Day School, the K-12 public charter school, and Mariner Foundation, the school's affiliated nonprofit that funds its extracurricular inspire dance team. The district court abused its discretion in this case in denying my client's motion for a preliminary injunction based on claims of false advertising, which was unopposed at the district court, trademark infringement, and unfair and deceptive trade practices. We respectfully request that this Court reverse and direct the district court to issue a preliminary injunction because the district court abused its discretion by ignoring unrebutted evidence and making mistakes of law in examining whether my clients had stated a likelihood of success on the merits and had satisfied the other winter's factors for a preliminary injunction. To begin with false advertising, the undisputed evidence in the record is that Inspire PAC is making false or misleading representations of fact in commercial advertisements and interstate commerce. This claim was unopposed at the district court and the evidence was uncontroverted. Inspire PAC therefore waived its ability to rebut false advertising here by failing to present the argument in the district court. Mr. Vogel, can I ask you to go back first, and I appreciate you're starting with the false advertising claim, but regardless of the claims, in order to succeed and persuade the court that your clients were entitled to a preliminary injunction, there had to be evidence of irreparable harm, and you started, you acknowledged that. So what was the evidence in the record of irreparable harm? The evidence in the record of irreparable harm was that through false advertising and through trademark infringement, Inspire PAC was eroding the brand and the goodwill of the Inspire Dance Team and of the Jackson Day School, the charter school that operated the Inspire Dance Team. Okay. So that's a statement. So what evidence supports that statement? Well, these events had happened right away, and in the record, we have evidence that parents of Inspire Dance Team students are confused in understanding which dance team is Inspire because Inspire PAC is advertising. But don't you have to show that you own the mark before you can, I mean, in terms of the irreparable harm, before you can say that there was false advertising in all of these claims? Well, false advertising and trademark infringement are two different claims. They both fall under the Lanham Act, and so we look at them separately, and they have separate elements. So the false advertising claim has elements that this court has enunciated in the Scotts case. In the Scotts case, false advertising occurs when false statements or representations are made. But you would agree that the representations that they're making is that this is a company and this is the services we provide. But wouldn't you have to be able to show that you own the mark first, the trademark first? Respectfully, Your Honor, not to prevail on false advertising. For false advertising, we have evidence in the record that the pictures that are on Inspire PAC's website and the videos and the parent testimonials on the website and on the social media platforms on Facebook, Instagram, and YouTube are pictures of the Jackson Day School Inspire Dance Team. Are you saying a false advertising claim does not require a trademark? Correct. False advertising claim does not require a trademark. It requires a showing that there are false statements or representations that are made in advertising or promotion and are made in interstate commerce. But I guess the argument is that, and I'm sure counsel will address it, is that how do you prove that what they're saying is false if they own the trademark? Well, we're not running away from the trademark claim, of course, and we're happy to discuss the trademark infringement claim. But the way that we prove that they have committed false advertising is because they are showing pictures of our dance team and videos and parent testimonials of our dance team. And there's evidence in the record that it's a sworn declaration that is our dance team. I mean, they even have a picture of the charter school's head of school's daughter on their website holding it out as their dance team, but it's actually the charter school's dance team. And there is no evidence in the record that it is their dance team. You know, I think the question, though, is if these videos and the images of a team are ones that Mae and Lewis actually own, then how is that false advertising? There is no evidence in the record that they owned a dance team or they had a business of any sort. Well, what if they owned the videos and the images? There is no evidence in the record that they owned the videos or they owned the images. But even if they did, they are currently advertising their business with images and videos of our dance team as if it were their own. I don't know if Your Honors are baseball fans, but could you imagine the Los Angeles Dodgers putting on their website pictures of the New York Yankees as if those were the Dodgers players and advertising, come to our game, here are our players? Well, I don't know if the Dodgers want to do that right about now. No, they don't want to do that now. They don't want to do that now. And that's false advertising. And the point is there is no evidence in the record that it's their team, that they even had a business. But I want to talk about trademark infringement. Well, before you do that, I don't know that I got an answer to my first question about, even if you assume all that to be true, what is the evidence of irreparable harm? I mean, if you've lost folks who would otherwise be consumers of your dance team, that seems to me to be remediated by money damages. There's a claim, an allegation of sorts that enrollment at your school, your client's school, would be diminished. But that's just a statement in the record. That's right. The problem I have with this case is that there are all kinds of statements flying around about irreparable harm, but very little evidence as far as I can see. Well, Your Honor, it's a brand. It's like any two competing businesses. When one business falsely advertises and puts pictures of the other business's customers and calling them their own, or in this case it's a dance team and calling it their own, that's going to erode the brand and the goodwill that's associated. And then with the trademark as well, when you're using your competing business's trademark as your own, that erodes the brand. And, in fact, under the Lanham Act, 15 U.S. Code 1116A, there's a rebuttable presumption of irreparable harm. And in this case, frankly, since the time we had this hearing some months ago, the dance team numbers have greatly diminished. And so, frankly, it has borne out that the goodwill and the brand recognition is very harmed, and that is the type of irreparable harm that this court has recognized. And there is a rebuttable presumption of irreparable harm in this case, Your Honor. It's one of these classic eroding of brand recognition and goodwill for both the inspired dance team, because they're using the inspire name, and because they are falsely advertising with pictures and videos of our team on their website and their social media channels that are necessarily used by parents in making decisions as to what dance team to sign their child up for. So who do you say owned the mark when the defendants in this case were at the CMS school? Who owned the mark then? Well, this is their floater vehicle theory of the case, that they owned a mark when they were at CMS. But the only evidence in the record is when they were at CMS, they were teachers, and they coached an extracurricular dance team. There is no evidence in the record that they had some ongoing side business while they were doing that during which they could develop and use a trademark. And that is required under the United Drug case, the U.S. Supreme Court case back from 1918. There was a principle that there are no rights to trademark unless it's in connection with an ongoing business. Well, I thought they submitted declarations or affidavits to that effect. Wasn't that evidence? They did not. The only piece of evidence that you will find in the record that purportedly supports their argument is a Facebook post from April 2016 when they worked for CMS. It's a picture of them with children, and it says, we have a community team slash company of dancers. I thought there was evidence of the CMS team that there was two teams, right, is what their argument is, that there were two teams, that there was a school team and then there's an inspired team, and the different teams had different jackets and different calendars. I mean, wouldn't that be evidence of two different teams at CMS when they were at the other school? I would say, first of all, Your Honor, that was only argument. There's no evidence in the record. None of what you just described is within the sworn declaration or in any of the 19 exhibits that they submitted to the district court. It was only argument that came up at the district court hearing and in their briefs. But second of all, whether there's one team or two teams that were being coached out of the CMS school doesn't matter. What matters is whether there was an existing business that they were operating and that they developed and they used the trademark in connection with that existing business. There is no such evidence. So I guess I'm confused because there are pictures dating back, I think, to 2012 with the inspired jacket on the website and then competitions where they won different competitions under this inspired name. But you're saying that there's no evidence. Well, that's not evidence of a business. The evidence is that they were teachers and they were coaches of a CMS school dance team and that they competed with that team. This idea that there were two teams and two jackets and there was a side business that we operated out of the school, none of that is within the sworn declaration. And frankly, it can't be true because CMS has a policy where they have to have contracts, as you would expect, with any outside business that uses their facilities, and there's no evidence of any contract or existence of a contract with CMS. CMS also has a policy that says they will not contract with current employees to use their facilities after hours. So CMS never would have contracted with them, and in fact, CMS did not contract with them. They don't have evidence of it because Is there evidence that they did not contract with them? Because I don't recall that in the record. It's not in the record. Since the hearing, we have determined that CMS never had a contract with them. So then who owned the mark when they were at CMS? If anyone owned the mark while they were at CMS, it would have been CMS because they were employees of CMS and CMS used the Inspire name for various dance competitions. So if we accept that as true, then what's the evidence that CMS abandoned the mark? Well, because under the Lanham Act, if a mark is not used for three years, it is presumptively abandoned. So what's the evidence that that mark wasn't being used by CMS? We have evidence in the record that we did, our client did, a diligent search to see if CMS ever used I thought that evidence was based on information and belief and just a bald statement to that effect. Well, there's only so much one can do to determine whether CMS used it and there is no indication that it was used after May and Lewis left CMS in 2018. Since the hearing, we've determined that that is in fact the case and it's not surprising. They used the name, they left CMS. See, that's the problem. Since the hearing, why wasn't that determined before the hearing? Yeah, well, because we don't even know that their defense to our trademark infringement claim was going to be that they owned the mark. We didn't know that until a Friday night with the hearing on Monday morning. Well, here's what the district court concluded. Basically, the district court said there's just too many disputed issues of fact here. I can't find from one side or the other. We're moving forward. And your statement seemed to be suggesting that a lot of stuff has happened since the hearing. Well, then go back to the district court. I mean, why is this appeal even right? No, go back to the district court and we feel like the facts that are material are unrebutted. I mean, we have teachers at CMS. If they developed a mark, it was CMS's mark because there's no evidence that they had a business at the time. There's no evidence that CMS used the mark after 2018. Has CMS ever claimed the mark? CMS doesn't claim the mark today, no. Our client started using the mark in 2019, 2020. That is uncontroverted in the evidence that our client extensively used the mark. And the fact that May and Lewis developed the mark is of no moment. I mean, there are several cases, and we cited the Emerald City Management, which is an unpublished case from Eastern District of Texas, but it's cited to the Daytona Auto Fiberglass case, Western District of Pennsylvania. It's cited to the Smith v. Kahoma chemical case, was a court of customs and patent appeals case, 1959. And it's cited to the Gee's Bottom-Up case, which we cite extensively in our brief Southern District of New York 1983 case for the idea that in a situation with an employee, when the employee develops the mark in the scope of employment, it's the employer who owns the mark. I see that my time has expired. We ask this court to reverse and to direct the district court to issue a preliminary injunction. Thank you. Thank you, Mr. Bowman. Ms. McGee. May it please the Court, I'm Tricia McGee, and I represent Megan May, Lisa Lewis, and Inspire Performing Arts Company. This case hinges on the standard of review, and the standard of review that was applicable at the district court, as well as the standard of review that applies here before your honors. At the district court, the school entities, and that's what we will refer to them as is that's how we refer to them in the brief, the school entities carried a heavy burden to warrant the extraordinary relief of a preliminary injunction at a hearing that took place less than two weeks after they filed their complaint. And they failed to satisfy their heavy burden to make a clear showing of likelihood of success on the merits of their trademark infringement claim, because they could not show that they owned the mark or that they had priority in use, of the false advertising claim, because they failed to show that any of the statements or advertisements that they directed the court to were false. And then their third workaround, once they realized that the court was not going to enforce their non-solicitation agreement, was this claim under the Unfair and Deceptive Trade Practices Act, seeking to enjoin our clients from representing the history of the Inspire brand that they had developed. I'll start first with the irreparable harm question, Chief Judge Diaz, that you asked. There is no evidence of irreparable harm to the school entities. Well, Mr. Vogel says that a trademark infringement case, there's a presumption of irreparable harm once the mark is shown to be valid and owned by the person or the entity against whom the mark is being infringed. Is that right? I think that's right. Yes, Your Honor, that is very right. What I would like to highlight there is that once the mark is shown to be owned. The undisputed evidence before the court showed that in 2015, Ms. May and Ms. Lewis, who had been teachers and operated an extracurricular after-school dance team called the Winding Springs Elementary School Dance Team. Can I ask you, sorry to interrupt you, but where and in what form is that evidence? This is in Ms. May's affidavit, and that is on, it was the one that was submitted to the district court. Forgive me, Your Honor, I'm sorry. This is in JA 249. It starts her affidavit, and it talks about how Ms. May and Ms. Lewis decided that the students that had graduated from Winding Springs, it was a Title I school, had moved on to middle school, moved on to high school. They did not have opportunities to participate in these dance competitions. So she and Ms. Lewis, Ms. May and Ms. Lewis, decided to start the Inspire Dance Team for middle school and high school students who had been former students. And while they did not concede that they did not have a contract with CMS, they had an oral agreement with the principal to be able to use after-school space. So after the Winding Springs Dance Team rehearsed, which was the CMS school dance team, and the evidence that the school entities put before the district court all showed that was the Winding Springs Elementary School Dance Team, none of that referred to the Inspire Dance Team because that was separate. CMS never held out that they owned any portion of the mark for the Inspire Dance Team. You say you abandoned it from this use. Your Honor, their abandonment theory is interesting because they say that CMS abandoned it in 2018. 2018 is when Ms. May and Ms. Lewis were hired by the school entities, it was then called Mountain Island Charter, it's now called Jackson Day School, were hired to come start a dance program during the school day, teaching electives and specials at Jackson Day. As part of Ms. May's interview, and this is in her affidavit, also begins at JA 249, she says, during my interview I showed videos of the Inspire Dance Team and said, if I come here, I have to have the same arrangement that I have with Winding Springs, which is to allow the Inspire Dance Team to practice here. From 2018 to 2019, the Inspire Dance Team rehearsed at Jackson Day School and not once has Jackson Day School claimed that during that time they used the mark. From 2018 to 2019, the Inspire Dance Company continued to operate. So if it had been abandoned, if the mark had been abandoned by CMS in 2018. I guess I can't understand how you can abandon something if CMS never said they owned it. I agree, Your Honor, that is correct. It was not abandoned, but even accepting their abandonment argument, which they have no evidence that CMS ever owned the Inspire mark, we still have priority in use because Ms. May and Ms. Lewis and the Inspire Dance Team operated in 2018 to 2019. Use and commerce, they competed in North and South Carolina. The students were students that had been practicing at Winding Springs. I believe the affidavit only refers to one or two were even Jackson Day students. The students were not from the school from the 2018 to 2019 school year, or dance competition year. Even the school entity's own claimed first use and commerce and their application for a trademark is 2020. So Ms. May and Ms. Lewis continued to operate the Inspire Dance Company for years after CMS allegedly abandoned it. You used the term operate, and I guess if I understood Mr. Vogel's argument, is that what these people were doing were really just a recreational activity, not a business in the sense that warranted trademark protection. So what's your response to that? I do not think that the Lanham Act statute, and I don't have it right in front of me, requires a separate business. You can have a partnership operating a trademark. You can have individuals who have a trademark. There is nothing that requires a separate entity to own that trademark. It has to be a concern of some kind, though, right? Maybe not a, well, you tell me. What is required then? May and Lewis had a partnership with the Inspire mark and continued to operate that. Whether they were accepting payment directly, there is no evidence that CMS was paying them for the Inspire Dance Company mark. Whether they were being paid directly from the parents, I think there's evidence in the record and the transcript is referenced, as well as I believe in her affidavit, that a lot of these students were economically disadvantaged, so churches would sometimes sponsor. And some of this, Ms. May and Ms. Lewis were doing without pay. However, they were still using it in commerce because they were participating in dance competitions to others and representing the Inspire brand. And there was video shown in the transcript, shown at the hearing, and this happens at the end of a dance competition. Somebody wins an award and they say, tell us where you're from. And these students would proudly say, Inspire Dance Company, because they were using their mark under the name that Ms. May and Ms. Lewis held out as their dance company. Mr. Vogel says that for false advertising, you don't really need to prove the existence of a mark. Can you respond to that and also respond to the notion that the video or the statements that were submitted on the website after your clients left what is now Jackson Day School were, in fact, false, because they seemed to allude to the fact that they were engaged in activities, had copies of photographs and the like that included their time at Jackson Day School? Your Honor, if you look closely at the exhibits in the record, I believe they begin on page 232. Maybe, I'm sorry, I believe it's 232. The exhibits they're referring to are social media pages. These are images of dancers. There is nothing in these advertisements, nothing on the website that says anything false. It's undisputed that Ms. May and Ms. Lewis were the directors and the choreographers of the dance program at Jackson Day and that they continue to operate their Inspire Dance Company at Jackson Day just because Jackson Day students appear in the images does not make them false. Second, there's no evidence that Jackson Day owned these images. There's not a copyright claim here. They're not saying that these images were not distributed to all participants for fair use. It's not false that Ms. May and Ms. Lewis coached those students. Nobody disputes that. So to be able to advertise, we have coached these students, this is some of our work product, where there's no evidence that anyone else owns those images is not false. I will also say that in large part the argument before the district court is that what made those representations false was the association with Inspire Dance Company. I believe at one point they argued that they should not, that Ms. May and Ms. Lewis should not be able to assert that they had experience coaching these teams. Again, that was not false. And it all ties back to the mark which Ms. May and Ms. Lewis continue to own and the Inspire Dance Company images and competition videos occurred under the Inspire Dance Company mark. Why didn't you have a separate contract for Jackson Day? If hindsight was 20-20, Judge Wynn, I agree. There are oftentimes litigation results with misses, right? There was an oral agreement made between Ms. May and Ms. Winstead at her hiring, and it's in her affidavit that says where she showed the videos of the Inspire mark, talked about the Inspire Dance Company, how would it come to be to provide an opportunity for these students once they were not at the elementary school. And she said, if I come here to work, I need a place where my students can rehearse. Ms. Winstead, according to the affidavit, showed that to the board, received permission, and agreed that for the 2018 to 2019 year, at least Ms. May and Ms. Lewis could continue to operate their Inspire Dance Company at Jackson Day. That's an oral agreement. Would it have been better if it had been written? Yes, Your Honor. But it was an oral agreement for her to be able to do that separately, apart from, and distinct from Jackson Day School using their facilities. On the false advertising, the argument is that your clients are using the pictures of former students on your current website that could potentially be on another dance team, and I think that's the argument regarding false advertising. Why is that not? If that is the argument, Your Honor, there was no evidence of that. The images that were being used to advertise, whether they, it's not mutually exclusive, right? You can be Inspire Dance Company students and also Jackson Day students. They could have been on both teams. It's not my understanding that any evidence was presented before the district court, and again, this goes back, it was their burden, right? My clients had no burden of proof. They had to clearly show, here's what's going on and here's why it's false, and there's no evidence that that's what was happening. But I think the argument is that these students are no longer, they are not on the team, on your client's team. They're on the Jackson Day School team, and that is the false advertising. Your Honor, if that is true, that evidence was not presented before the district court. There was not one image identified or representation. Some of the parent testimonials, they've alleged that's false advertising. The parents are talking about Ms. May and Ms. Lewis and what has been achieved for their children as part of the coaching. Inspire could have also, I'm sorry, Inspire used those parent testimonials. Jackson Day School could have also used those parent testimonials, but there was not any evidence before the district court saying this is not actually a student of Inspire Dance Company, and that was their burden to show. I want to talk real quickly on the issue of waiver that they have brought up regarding the false advertising. One, it was not waived. As your honors are aware, this was an expedited procedure. The court acted quickly in noticing the hearing. The court specifically said we'll hear argument and evidence, so it was contemplated that new evidence would be presented at the district court hearing. Also, the reply brief was filed at 830 the morning of the hearing. It was the first time that there had been this argument asserted regarding CMS's alleged ownership of the mark, which there was no evidence of that. And so during the hearing, that is the reason why additional evidence was presented to the district court. None of it was objected to when it was presented. It was visibly shown to the court. So there was no waiver in terms of something that was raised for the first time at the hearing. Also, I cannot remember if I said this. Forgive me. In order to have priority or any presumption for irreparable harm on the trademark, the school entities were required to show that they owned the mark, which they did not do based on the continuous use in commerce by Ms. May and Ms. Lewis from 2016 through now, through current. If your honors have no further questions for me, we respectfully. Any more questions? No, Ms. McGee. We respectfully request that you affirm the decision of the district court, concluding that it did not abuse its discretion in its ruling, that the school entities failed to satisfy the heavy burden to show and demonstrate all of the required winner factors in order to justify a preliminary injunction at this stage of the litigation. Thank you very much. Mr. Vogel, you've got some rebuttal. Thank you. I'd like to make one point with respect to false advertising and a few points with respect to trademark infringement. To begin with false advertising, opposing counsel said repeatedly that there was no evidence in the record from our side that the images and videos and parent testimonials were of our client's dance team. There is evidence in the record. Joint appendix page 54 is a declaration from Tammy Winstead, the head of Jackson Day School. We attach to that images of the website and of the social media platforms. We say under oath that these are pictures, these are images, these are parent testimonials, all about the Jackson Day School Inspire dance team. That is uncontroverted in the record, so much so that Inspire PAC did not oppose it at the district court, did not oppose it in their brief at the district court, did not argue it at the district court. With respect to trademark infringement, we heard from opposing counsel that when May and Lewis were working for the CMS school district, they had an oral agreement with the principal at Winding Springs Elementary School that they could operate some second team out of the gymnasium. There is absolutely no evidence of that in the record, none at all. You will find nothing in the joint appendix that there was any agreement between May and Lewis and some purported business they may have had or think they had with CMS. You also heard from opposing counsel that when they came to work for Jackson Day School and they interviewed with Jackson Day School that they told the head of the school, gee, we really have to have the same arrangement with you that we had with CMS and rehearse here. Again, absolutely no evidence that that conversation occurred, no evidence at all that there was. Why isn't the affidavit, her affidavit saying that she had this conversation? It's not evidence? With all due respect, Judge Diaz, it is not in the affidavit that there was some conversation that they needed to have the same kind of arrangement with Jackson Day School that they purportedly had with CMS. It's not. The only thing in their affidavit is that they showed a video and it showed dancers. That's the only thing that's in their declaration. There is no evidence of an agreement. There is no written contract. And in the evidence, our client says they always enter into contracts if they have a business arrangement with an outside business. There was no such arrangement here. And this makes this case different from the floater vehicle case. In the floater vehicle case that they cite, there was evidence in the record that there was an oral license agreement with the new employer. Here there is no such evidence. They don't get the benefit of this floater vehicle theory that there was an oral agreement. They didn't argue in the court below that there was an oral licensing agreement, and they have no evidence that there was an oral licensing agreement. The last point I'd like to make is that it is required that a trademark is developed and used with an existing business. Now you heard opposing counsel say, well, an individual can own a trademark. It doesn't have to be a business that owns a trademark. And that's true. But that individual has to have developed and used the trademark with an existing business. And that's the principle that comes from the U.S. Supreme Court case, United Drug. That's the principle that was used in a manner that is quite similar to this case. In the G's bottom-up case, the Southern District of New York, 1983, where a bar manager came up with a logo, came up with a trademark, used it. The bar used it. The bar manager left. The first bar said, hey, that's our trademark. And the court said, citing to the United Drug case, that it doesn't belong to the bar manager. It belongs to the bar. It belongs to the proprietor. But I think the problem you have is that CMS, you're making the argument that CMS owned the trademark and abandoned the trademark. CMS, there's no evidence in the record that CMS has ever said that they own the Inspire Dance Team. And there is a Facebook post, I think it's JA-250, where she's saying, JA-249, 250, where she's saying, I'm teaching at the school. I think it's her affidavit or declaration, teaching at the school. And then the Facebook post says that I've gone out on a leap of faith to start my own community company. Which would allow me to work with my former dancers who are now in middle school and high school, and it's because these children inspire me, and that is how I came up with the Inspire Dance Company. And so I know it seems as if you're trying to say that the trademark belonged to CMS, although CMS has never made the argument that they own the trademark. But then you're saying they abandoned the trademark, which is I'm not sure how CMS abandons a trademark if, I think by when I asked you earlier, that they've never claimed that they own the trademark. And then you have this post from 2016, a Facebook post that's in her declaration, where she is saying that she came up with this company called Inspire Dance Company and why she came up with it, and you're saying that she does not own the trademark. I see my time has expired, but I would like to answer your question, may I? Absolutely. Thank you. To begin, we don't rely on a theory that CMS owned the trademark and abandoned the trademark. Rather, our claim to ownership of the trademark is that it was developed by our employees at Jackson Day School in the 2019-2020 timeframe. It was extensively used by our client, and we therefore own the trademark under the principles of United Drug, G's Bottom Up, and the other cases that state when an employee develops a trademark and the employer uses it, it's the employer that owns the trademark. But going back to the time period of CMS, their Facebook post, if you take a careful look at it, says that they started a community team slash company. A company of dancers, a team of dancers is like a dance troupe. It's not necessarily a business. In fact, at the joint appendix, page 217, when last summer they did start a competing business called Inspire Pack, they said in an email, and this is in the record, we have now just started an independent organization. They never had a business before. They conceived it was a new business. And so, yes, a picture of students, they started a dance troupe, but no evidence of a business that you would expect to see. My time has expired, and again, I'd like to ask that you reverse and that you direct the district court to issue a preliminary injunction. Thank you, Mr. Vogel. Thank you. We'll come down, and first of all, I want to thank the counsel for your arguments this morning. We'll come down and greet you and then take a brief recess before moving on to our final two cases. This animal court will take a brief recess.
judges: Albert Diaz, James Andrew Wynn, DeAndrea Gist Benjamin